**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **REBECCA ANN HOGUE,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 3:24-CV-1926-K** |
| | § | |
| **COMMISSIONER, SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| **Defendant.** | § | |

**AMENDED[1] FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of

the United States Magistrate are as follows:

**FINDINGS AND CONCLUSIONS**

**I.    STATEMENT OF THE CASE**

Plaintiff Rebecca Ann Hogue ("Hogue") filed this action pursuant to Section 405(g) of

Title 42 of the United States Code for judicial review of a final decision of the Commissioner of

Social Security denying her claims for a period of disability and disability insurance benefits

("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social

Security Act ("SSA"). On August 11, 2022, Hogue protectively filed her applications, alleging

that her disability began on November 8, 2021. (Tr. at 18; *see* Tr. 211-31.) Hogue's applications

were denied both initially and on reconsideration. (Tr. 18; *see* Tr. 67-106, 112-27.) Hogue then

---

[1] This Findings, Conclusions and Recommendation is amended to correct several references to a specific footnote.

1

requested a hearing before an administrative law judge ("ALJ").  (Tr. 18; *see* Tr. 128-29.)  On October 5, 2023, the ALJ held a telephone hearing and, on December 15, 2023, found that Hogue was not disabled within the meaning of the SSA.  (Tr. 15-29; *see* Tr. 34-66.)  Hogue then filed a request for review of the ALJ's decision to the Appeals Council.  (Tr. 206-07.)  On June 5, 2024, the Appeals Council denied Hogue's request, leaving the ALJ's decision to stand as the final decision of the Commissioner.  (Tr. 1-6.)  Hogue subsequently filed this civil action seeking review of the ALJ's decision

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. §§ 401-434, and SSI benefits are governed by Title XVI, 42 U.S.C. §§ 1381-1385, of the SSA.  In addition, numerous regulatory provisions govern disability insurance and SSI benefits.  *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI).  Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI."  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  *See* 20 C.F.R. §§ 404.1520, 416.920.  First, the claimant must not be presently working at any substantial gainful activity.  *See id*. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit.  20 C.F.R. §§ 404.1572, 416.972.  Second, the claimant must have an

impairment or combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* 20 C.F.R. §§ 404.1520(a)(iii), (d), 416.920(a)(iii), (d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(a)(iv), (f), 416.920(a)(iv), (f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute

its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III.    ISSUES

In her brief, Hogue presents the following issues:

1. Whether the ALJ failed to meet his burden of proving that Hogue's acquired work skills were readily transferable to a significant range of other semiskilled work and that the occupations at issue required very little, if any, vocational adjustment; and

2. Whether the ALJ's RFC determination is inconsistent with the ALJ's finding at Step Two of a severe mental impairment.

(Plaintiff's Brief ("Pl.'s Br.") at 1; 3-13.)

## IV.    ALJ DECISION

As set forth above, in a decision dated December 15, 2023, the ALJ concluded that Hogue was not disabled within the meaning of the SSA. (Tr. 18-29.) At Step One, the ALJ found that Hogue met the insured status requirement of the Act through December 31, 2026, and had not engaged in substantial gainful activity since November 8, 2021, the alleged onset date of her disability. (Tr. 20; *see* Tr. 18.) At Step Two, the ALJ found that Hogue had the following severe impairments: "post-COVID syndrome respiratory disorder, diabetes mellitus, major depressive disorder (MDD), PTSD, anxiety disorder, and obesity." (Tr. 20 (emphasis omitted).) Next, at Step Three, the ALJ determined that Hogue did not have an impairment or combination of impairments that met or was medically equivalent to the severity of one of the listed impairments in the Listing. (Tr. 21-23.) As to Hogue's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except she can only occasionally climb ramps and stairs, she can only occasionally climb ladders, ropes, or scaffold; she can only occasionally balance, stoop, kneel, crouch, and crawl; and she is limited to only occasional exposure to pulmonary irritants such as fumes, dusts, odors, gases, and

poor ventilation.  She can understand, remember, and carry out detailed but not complex tasks and instructions.

(Tr. 23 (emphasis omitted).)

At Step Four, the ALJ found that Hogue was not able to perform any PRW.  (Tr. 27.) Subsequently, the ALJ found that, as Hogue was born on July 19, 1967, she was categorized as an individual closely approaching advanced age on the alleged disability onset date of November 8, 2021, as she was 54 years old, and had, subsequently, changed to the category of advanced age when she turned 55 years old.[2]  (Tr. 27.)  In addition, the ALJ noted that Hogue had at least a high school education and had acquired work skills from her PRW.  (*Id*.)  Subsequently, at Step Five, the ALJ found, based on Hogue's age, education, work experience, and RFC, that Hogue had acquired work skills from her PRW "that were transferable to other occupations with jobs existing in significant numbers in the national economy."  (Tr. 27.)  Specifically, the ALJ determined that Hogue could perform the sedentary, semi-skilled jobs of counter attendant[3] and insurance clerk and the sedentary, unskilled job of sorter.  (Tr. 28.)  Accordingly, the ALJ found that Hogue was not disabled as defined in the SSA from November 8, 2021, through the date of the decision.  (Tr. 28.)

## V.     DISCUSSION

### A.     <u>Transferability of Acquired Work Skills</u>

In her brief, Hogue argues that remand is required because the ALJ "failed to meet his burden of providing that [ ] Hogue's acquired work skills were readily transferable to a significant

---

[2] A person closely approaching advanced age is a person that is age 50 to 54.  20 C.F.R. §§ 404.1563(d), 416.963(d).  A person of advanced age is a person that is 55 or older.  *Id*. §§ 404.1563(e), 416.923(e).

[3] *See* n.7, *infra*.

range of other semiskilled work and that the occupations at issue required very little, if any, vocational adjustment." ("Pl.'s Br. at 1; *see* Pl.'s Br. at 3-9). Specifically, Hogue states:

> In this case, [the vocational expert ("VE")] cited to two (or possibly three) sedentary occupations (insurance clerk, sorter, and potentially, counter attendant) and possibly one light occupation (administrative clerk) to which [ ] Hogue's work skills would allegedly transfer. Critically, however, the VE did not state that the skills would transfer with "little, if any, vocational adjustment" (Tr. 27-28).
>
> To clarify, the ALJ adopted the occupations of insurance clerk and sorter in his decision and relied on the same to carry the Agency's step five burden (Tr. 28). However, the ALJ's conclusion was flawed because he failed to assess the level of vocational adjustment necessary, as required by Agency regulations for an individual of [ ] Hogue's age. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, [§] 202.00(f) (requiring there be "very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry in order to find transferability of skills for individuals who are of advanced age (55 and over)). For that reason, the ALJ's decision cannot be affirmed and remand is required.
>
> Because [ ] Hogue was a person of advanced age who was limited to less than the full range of light work, not only does the Agency have the burden of showing that [ ] Hogue had transferable skills, but also that her previous work was so similar to the occupations adopted by the ALJ that she would need to make "very little, if any vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(f). Thus, by failing to obtain evidence or make any necessary findings as to whether [ ] Hogue's skills would transfer with little, if any, vocational adjustment, the ALJ erred in finding that Plaintiff could perform the sedentary occupations.

(Pl.'s Br. at 4.)

Hogue claims that, during the questioning of the VE at the hearing, the ALJ utilized the language "minimal vocational adjustment" instead of using the correct legal standard that requires "very little, if any, vocational adjustment." (Pl.'s Br. at 5.) Hogue argues that, consequently, remand is required because, "in his exchange with the VE, the ALJ relied on an incorrect legal standard." (*Id*.; *see* Pl.'s Br. at 5-6.)

In addition, Hogue states that "even more problematic is the fact that the ALJ ultimately made **no findings whatsoever** in his decision related to the degree of vocational adjustment that

would be required by [ ] Hogue as was required by 20 C.F.R. Pt. 404, Subpt. P, App. 2, [§] 202.00(f) (Tr. 27-28)." (Pl.'s. Br. at 6 (emphasis in original).) Hogue, citing to Social Security Ruling ("SSR") 82-41, 1982 WL 31389, at *7 (S.S.A. 1982), states, "It must be noted that an ALJ's transferability analysis must be completed with an exceptional level of clarity." (Pl.'s Br. at 6.) In addition, Hogue claims that "there is no indication that the ALJ and VE discussed or analyzed the level of 'minimal adjustment' so as to meaningfully satisfy the requirements of 20 C.F.R. Pt. 404, Subpt. P, App. 2, [§] 202.00(f)." (*Id*.) Hogue asserts, citing to Program Operations Manual System ("POMS")[4] DI 25015.017D, that, "[i]n other words, nowhere in the hearing transcript (and obviously, nowhere in the ALJ's decision), is there any discussion, explanation, or analysis of the tools, work processes, work setting or industry of the occupations at issue, all of which must be so similar to the PRW that [sic] amount of learning needed to make a vocational adjustment would be minimal."[5] (Pl.'s Br. at 7.)

In this case, after finding at Step Four that Hogue was unable to perform her PRW as an officer manager, the ALJ stated that Hogue had "at least a high school education" and that she had "acquired skills from past relevant work." (Tr. 27 (emphasis omitted).) The ALJ then stated:

> The [VE] testified that the claimant's [PRW] as office manager was skilled with a specific vocational preparation (SVP) code of 7 and required the following skills: record keeping, the ability to plan and execute her own work, the ability to use reason and judgment, and accuracy in recording data.

---

[4] "While POMS guidelines do not have the force and effect of law, they do have some value, effect, and persuasive force." *Deborah T. v. Saul*, No. 4:18-cv-00765-O-BP, 2019 WL 5025951, at *4 (N.D. Tex. Sept. 6, 2019) (internal quotation marks and citations omitted).

[5] Hogue also argues that, even if the ALJ had intended the administrative clerk position, instead of the counter attendant position, "a single occupation is not sufficient to establish that [ ] Hogue's skills would transfer to a significant range of sedentary occupations." (Pl.'s Br. at 8.) However, as set forth in, footnote 7, *infra*, the ALJ also referred to two other occupations (Insurance Clerk and Sorter) that would provide substantial evidence for the ALJ's decision at Step Five.

(Tr. 27.)  At Step Five, the ALJ, considering Hogue's age, education, work experience, found that Hogue had "acquired work skills from [PRW] that [were] transferable to other occupations with jobs existing in significant numbers in the national economy."  (Tr. 27 (emphasis omitted).)  The ALJ further stated:

> In determining whether a successful adjustment to other work can be made, I must consider the claimant's [RFC], age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2.  If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11).  When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). . . .
>
> The [VE] was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and [RFC] as the claimant, and which require skills acquired in the claimant's [PRW] but no additional skills.
>
> The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as:
>
> Counter Attendant, DOT[6] No. 219.362-010, sedentary, semi-skilled (SVP 4), with approximately 1,000,000 plus positions nationally.[7]

---

[6] DOT is the abbreviation for the "Dictionary of Occupational Titles."  *See* U.S. Dep't of Labor, DOT (4th ed., rev. 1991).  "The Department of Labor promulgated the DOT in order to 'standardize occupational information in support of job placement activities.'"  *Zaicek v. Astrue*, No. 4:09-CV-069-Y, 2010 WL 3384887, at *10 (N.D. Tex. June 23, 2010) (quoting *DOT* at xv).

[7] The Court notes that the job associated with DOT No. 219.362-010 is actually titled "Administrative Clerk," not Counter Attendant.  It appears that the ALJ accidentally used the term "Counter Attendant" based on the VE's earlier testimony in the hearing regarding a person classified as "closely approaching advanced age," which was the category Hogue fell in on the alleged disability onset date of November 8, 2021, and until she turned 55 on July 19, 2022.  (Tr. 28; *see* Tr. 27, 58).  Based on the VE's testimony at the hearing, the Court finds that the use of "Counter Attendant" instead of "Administrative Clerk" is an inadvertent scrivener's error.  (*See* Tr. 58-59.)  *See Dukes v. Colvin*, No. 3:14-CV-173-BF, 2015 WL 1442988, at *4 (N.D. Tex. Mar. 31, 2015) ("In the context of social security cases, errors in ALJ decisions have been excused as mere scrivener's errors when the ALJ's intent was apparent.")  Moreover, even if there was no scrivener's error and the job of Administrative Clerk or Counter Attendant was omitted from consideration, there are still two other occupations (Insurance Clerk and Sorter) that the ALJ found that Hogue's skills were readily transferable to.  Thus, these **two** occupations would provide substantial evidence to support the ALJ's decision at Step Five.  *See, e.g.*, *Blackmon v. Astrue*, No. 11-1509, 2012 WL 3253157, at *5 (W.D. La. July 11,

Insurance Clerk, DOT 219.37-014, sedentary, semi-skilled (SVP 4), with approximately 17,590 positions nationally.

Sorter, DOT No. 209.687-022, sedentary, unskilled (SVP 3), with approximately 420,000 plus positions nationally.

Pursuant to SSR 00-4p, I have determined that the [VE]'s testimony is consistent with the information in the Dictionary of Occupational Titles except for job numbers which comes from other published data.

Accordingly, although the claimant's additional limitations do not allow the claimant to perform the full range of light work, considering the claimant's age, education and transferable work skills, a finding of "not disabled" is appropriate under the framework of Medical-Vocational Rule 202.15 and Rule 202.07.

(Tr. 28 (footnotes added).)

As set forth above, the claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Newton v. Apfel,* 209 F.3d 448, 453 (5th Cir. 2000). "Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding." *Newton,* 209 F.3d at 453. In this case, the ALJ supported his determination at Step Five by relying upon the testimony of the VE. (Tr. 27-28.)

A VE "is called to testify because of his familiarity with job requirements and working conditions." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). "The value of a [VE] is that he is familiar with the specific

---

2012) (stating that the ALJ, when a finding is made that a claimant has transferable skills, must identify "as least several other occupations" to which the acquired work skills are transferable), *report and recommendation adopted*, 2012 WL 3253155 (W.D. La. Aug. 7, 2012); *Napoleon Y. v. O'Malley,* No. 3:22-cv-00718-RCY-SLS, 2024 WL 1057496, at *10-12 (E.D. Va. Jan. 6, 2024) (collecting cases), *report and recommendation adopted*, 2024 WL 1054553 (E.D. VA Mar. 11, 2024). In fact, it can be argued that a finding of just one occupation that a claimant's skills are readily transferable to would provide substantial evidence to support the ALJ's decision at Step Five. *See Bryant v. Kijakazi*, No. 6:22-CV-01098-ADA-JCM, 2023 WL 12008469, at *4 (W.D. Tex. Sept. 11, 2023) (finding that a **singular** occupation with 25,000 jobs in the national economy suffices for a "significant range" (as defined in 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(e)) of transferable work Plaintiff can perform at Step Five).

requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id*. In testifying, a VE "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170.

A claimant's work experience encompasses the skills and abilities acquired through work done in the past, which shows the type of work a claimant may be expected to do. 20 C.F.R. §§ 404.1565, 416.965. When the transferability of skills is at issue, the ALJ must make certain findings of fact and include them in his decision. SSR 82-41, 1982 WL 31389, at *7. After identifying the skills a claimant acquired through PRW, the ALJ must make a determination regarding whether or not those skills are transferable to other occupations. 20 C.F.R. §§ 404.1568(d), 416.968(d). Transferability applies only to situations "when the skilled or semi-skilled work activities [claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. §§ 404.1568(d)(1), 416.968(d)(1); *see* SSR 82-41, 1982 WL 31389, at *2. The regulations state that transferability is most probable for jobs requiring the same or a lesser degree of skill, or jobs which use similar tools, machines, materials, and processes. *See* 20 C.F.R. §§ 404.1568(d)(2), 416.968(d)(2). Because the transferability of a skill is a determination ultimately made by the ALJ, the VE's testimony must be specific enough to provide the ALJ with enough information to make an informed decision. *See Muehling v. Colvin*, No. 2:12-CV-013, 2013 WL 1194078, at *4 (N.D. Tex. Mar. 6, 2013). For a finding of transferability of skills to light work for persons of advanced age who are closely approaching retirement age, as in this case, "there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry."

20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(f); *see* SSR 82-41, 1982 WL 31389, at \*5;[8] 20 C.F.R. §§ 404.1563(e),[9] 416.963(e). Therefore, "when a claimant falls within the 'closely approaching retirement age category, the ALJ must, at the very least acknowledge the applicability of the heightened standard for vocational adjustment [as set forth in section 202.00(f)].'" *Devirrie U. W. v. Saul*, No. 3:18-cv-02105-BT, 2019 WL 4689026, at \*3 (N.D. Tex. Sept. 26, 2019).

During the hearing, the ALJ asked the VE whether, as to the three jobs of Administrative Clerk, Insurance Clerk, and Sorter, there were transferable skills that would require "no more than minimal vocational adjustment." (Tr. 59-61.) The VE confirmed that these jobs would require "no more than minimal vocational adjustment." (*Id.*) As to the skills that Hogue had acquired from her PRW that would transfer to permit Hogue to perform these new jobs, the VE stated:

> [T]he authority to keep records both verbally and numerical. The ability to plan and execute [her] own work, reasoning, and judgment, be accurate in recording data. Of course, physically demand I think at the time with exertion, et cetera. Those would be the primary skills, Your Honor.

---

[8] The relevant portion of SSR 82-41 states:

> c. *Special provisions made for transferability*. To find that an individual who is age 55 or over and is limited to sedentary work exertion has skills transferable to sedentary occupations, there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings or the industry. The same is true for individuals who are 60 and older and are limited to light work exertion. Individuals with these adverse vocational profiles cannot be expected to make a vocational adjustment to substantial changes in work simply because skilled or semiskilled jobs can be identified which have some degree of similarity with their PRW. In order to establish transferability of skills for such individuals, the semiskilled or skilled duties of their past work must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation.

SSR, 82-41, 1982 WL 31389, at \*5; *see* 20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4).

[9] This section states:

> (e) *Person of advanced age*. We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work. We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60 or older). *See* § 404.1568(d)(4).

20 C.F.R. § 404.1563(e); *see* 20 C.F.R. § 416.963(e).

(Tr. 61 (mistakes in original).)

Contrary to Hogue's arguments, the Court finds and concludes, based on the testimony of the VE at the hearing, that the ALJ did have substantial evidence to support his decision at Step Five that Hogue had particular skills from her PRW that were transferable. (*See* Tr. 27-28.) In this case, it is clear that the ALJ thoroughly questioned the VE at the hearing regarding the transferability of Hogue's work skills. (Tr. 59-62.) In addition, as required by SSR 82-41, the ALJ specifically stated in his decision that the skills Hogue had obtained in her PRW as an officer manager would be readily transferable to the three jobs set forth above. (Tr. 27-28.) Additionally, the ALJ opined in his decision that Hogue's skills of keeping records, planning and executing her own work, using reason and judgment, and accurately recording data were transferable to the other jobs. (Tr. 27.)

Furthermore, the ALJ specifically questioned the VE regarding whether the three jobs would require "no more than minimal vocational adjustment." (Tr. 59-61.) While Hogue argues that it was error for the ALJ not to use the words set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(f) that "there must be very little, if any, vocational adjustment required," the Court notes that "a case will not be remanded in this circuit simply for the reason that the ALJ did not use magic words." *Blair v. Comm'r, Soc. Sec. Admin.*, No. 6:13CV345, 2014 WL 5336483, at *10 (E.D. Tex. Sept. 30, 2014) (internal quotation marks and citations omitted). "Rather, the [Fifth Circuit] will only remand a case if there is no indication that the ALJ applied the correct legal standard." *Id.* (alterations in original).

In this case, it is clear that the ALJ questioned the VE regarding whether Hogue's skills were transferable "with no more than minimal vocational adjustment," which the Court finds is the same as using the words "with very little vocational adjustment" set forth in section 202.00(f),

*supra*. In addition, the ALJ specifically noted in his decision that he asked the VE "if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity as the claimant, and *which require skills acquired in the claimant's past relevant work but no additional skills*." (Tr. 28 (emphasis added).) As the ALJ questioned the VE regarding vocational adjustment at the hearing and stated in his opinion, based on the VE's testimony, that no additional skills were required absent the skills obtained in Hogue's PRW, the ALJ fulfilled his heightened duty under section 202.00(f) regarding vocational adjustment. In this case, because the ALJ clearly identified that the skills that Hogue obtained from her PRW were transferable to other jobs and complied with applicable law regarding transferability of work skills, including specifically asking the VE about the heightened transferability requirements for a claimant of Hogue's age regarding vocational adjustment, remand is not required on this basis.[10]

### B.    Severe Mental Impairment Finding at Step Two and RFC Determination

In her brief, Hogue also argues that the ALJ's finding at Step Two that Hogue has the severe mental impairments of PTSD, anxiety disorder, and major depressive disorder is inconsistent with

---

[10] *See, e.g., Bryant*, 2023 WL 12008469, at *3 (affirming the ALJ's finding at Step Five that very little vocational adjustment was needed for the transferability of claimant's skills to one occupation based on the overall testimony of the VE); *cf. Judith L. W. v. Saul*, No. 3:19-cv-02806-E-BT, 2020 WL 7040904, at *3-4 (N.D. Tex. Dec. 1, 2020), *report and recommendation adopted*, 2020 WL 7399051 (N.D. Tex. Dec. 17, 2020) (failure of the ALJ to explicitly ask the VE about the degree of vocational adjustment needed for those of advanced age is not error as long as there is an indication that the ALJ applied the correct legal standard); *Blair*, 2014 WL 5336483, at *10 (finding that any error made when the ALJ did not specifically ask the VE about vocational adjustment was harmless because "the ALJ's opinion demonstrates that he applied the correct legal standard to determine whether Plaintiff could perform other work"); *Gallegos v. Berryhill*, No. H-17-201, 2018 WL 1069585, at *7 (S.D. Tex. Jan. 22, 2018), *report and recommendation adopted*, 2018 WL 1035717 (S.D. Tex. Feb. 23, 2018) (finding that the ALJ's decision regarding transferability of skills lacked substantial evidence because the VE did not discuss vocational adjustment and the ALJ "did not mention the applicable legal standard for vocational adjustment, much less discuss its application to Plaintiff's ability to perform the other work identified by the VE"); *Sergent v. Astrue*, No. 10-cv-01041, 2011 WL 3299051, at *8-12 (S.D. Tex. Aug. 1, 2011) (affirming the ALJ's Step Five finding even though the ALJ did not specifically ask the VE about vocational adjustment because the ALJ, in his written decision, referenced section 202.00(f) of the Medical-Vocational Guidelines); *see also Paul R. v. Comm'r of Soc. Sec.*, No. C19-1243, 2020 WL 777298, at *2 (W.D. Wash. Feb. 18, 2020).

the ALJ's RFC determination that did not include any limitations on Hogue's basic work activities.

(Pl.'s Br. at 10-13.) Specifically, Hogue states:

> In completing the [psychiatric review technique ("PRT") required under the special technique for assessing a claimant's mental impairments,] the ALJ found that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace (Tr. 22). This finding independently required a finding that Plaintiff's PTSD, anxiety disorder, and major depressive disorder were severe impairments. 20 C.F.R. §§ 404.1520a(d)(1)-(2), 416.920a(d)(1)-(2) (providing that the finding of a moderate limitation in any ONE of the four B criteria of the PRT requires a finding of impairment severity). . . .

> At this point it is absolutely crucial to understand fundamental Agency policy. On the mental side, "basic work activities" are defined by the regulations as "understanding, carrying out and remembering simple instructions," "us[ing] of judgment," "responding appropriately to supervision, coworkers and usual work situations," and "dealing with changes in a routine work setting." 20 C.F.R. §§ 404.1522(b)(3)-(6), 416.922(b)(3)-(6); SSR 85-15, 1985 WL 56857, *4.[11] The presence of a severe mental impairment means that **as a matter of law** the claimant's ability to perform basic work activities is significantly limited. 20 C.F.R. §§ 404.1522(a), 416.922(a) . . . .

> This crucial point of law is not up for debate. This is not about whisper down the lane games played with case law. This is about absolutely bedrock Agency policy. . . .

> . . . .

> Based on the foregoing comprehensive citations of Agency policy, it is beyond any question whatsoever that Plaintiff's admittedly severe mental impairment means that [ ] Hogue's ability to perform the basic work activities necessary for unskilled work was significantly limited. Any suggestion to the contrary by SSA's attorneys would be an intentional effort to distort core Agency policy.

> The problem for SSA here is that the ALJ's RFC finding is inconsistent with the ALJ's own prior finding of a severe mental impairment. The ALJ's RFC findings contains no limitations whatsoever on the claimant's ability to perform basic work activities. The only mental limitation adopted by the ALJ was a

---

[11] The Court notes that, contrary to Plaintiff's contentions, "basic work activities" is actually defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R.§§ 404.1522(b), 416.922(b). The regulations then proceed to list *examples* of "basic work activities" to include such things as understanding, carrying out, and remembering simple instructions; use of judgment; and responding appropriately to supervision, co-workers, and usual work situations. *Id.*

restriction on the ability to "understand, remember, and carry out detailed but not complex tasks and instructions" (Tr. 23).

There is not a single limitation in this RFC on the ability to perform any basic work activities (Tr. 23). First, and most importantly, there is no limitation whatsoever on the ability to understand, carry out and remember **SIMPLE** instructions. 20 C.F.R. §§ 404.1522(b)(3)[,] 416.922(b)(3). Quite to the contrary, the ALJ not only finds that Ms. Hogue can perform all simple work, but also detailed work (Tr. 23). Therefore, instead of limiting the capacity to perform simple work, which the PRT findings here required, the ALJ explicitly found that Plaintiff is capable of **more than** simple work (Tr. 23). This alone shows an unacceptable contradiction between the ALJ's PRT and severity findings and his RFC finding. The problems and self-contradictions continue. . . .

(Pl.'s Br. at 10-12.)

RFC is what an individual can still do despite his limitations.[12]  SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  SSR 96-8p, 1996 WL 374184, at *2.  RFC is not the least an individual can do but the most.  *Id.*  The RFC is a function-by-function assessment, with both exertional and nonexertional[13] factors to be considered, and it is based upon all of the relevant evidence in the case record.  *Id.* at 3-6.  The responsibility for determining a claimant's RFC lies with the ALJ.  *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990).  The ALJ must

---

[12] The Commissioner's analysis at Steps Four and Five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from Step Three to Step Four.  *Id.* at 461.

[13] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5.  Each function must be considered separately, but the final RFC assessment may combine activities.  *Id.*  Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations.  *Id.* at *6.

discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529(a) 416.929(a); SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

The Court notes that federal regulations require the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." *See* 20 C.F.R. §§ 404.1520a, 416.920a. In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. §§

16

404.1520a(b)(1), 416.920a(b)(1); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). For most mental impairment listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A and B or A and C of the adult mental disorders contained in the Listings.[14] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. §§ 404.1520a(b)(2), (c), 416.920a(b)(2), (c). "Paragraph B" contains four broad functional areas: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself.[15] 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E. The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. §§ 404.1520a(e)(4), 416.920(a)(e)(4).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed mental disorder in the Listing. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). If the impairment is severe but does not meet or equal a listed

---

[14] "Listing 12.05 has two paragraphs that are unique to that listing (see 12.00A3) . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.2.

[15] As set forth above, these four functional areas are known as the paragraph "B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1 §§ 12.00A.2.b, 12.00E. The degree of limitation is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). Extreme "represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.* "If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (*see* §404.1522)." 20 C.F.R. § 404.1520a(d)(1).

mental impairment, then the ALJ must conduct an RFC assessment.  20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).

In this case, the ALJ found at Step Two, as stated above, that Hogue had the severe mental impairments of major depressive disorder, PTSD, and anxiety disorder.  (Tr. 20.)  The ALJ then completed the requisite analysis required under the "special technique."  (Tr. 22.)  In evaluating Hogue's mental impairments under the "paragraph B" criteria, the ALJ found that Hogue had a mild limitation in (1) understanding, remembering, or applying information, (2) interacting with others, and (3) adapting or managing herself, and a moderate limitation in her ability to concentrate, persist, or maintain pace.  (Tr. 22.)  Next, at Step Three in analyzing whether Hogue's mental impairments met or equaled a listed impairment at Step Three, the ALJ found that the "severity of [her] mental impairments, considered singly and in combination, do not meet or medially equal the criteria of listings 12.04, 12.06, and 12.15."  (Tr. 22.)  As to Hogue's mental RFC, the ALJ found, based on all the evidence,  that Hogue had the RFC to perform light work except that she can understand, remember, and carry out detailed but not complex tasks and instructions.  (Tr. 23; *see* Tr. 22-26.)

As set forth above, Hogue emphatically argues that, because the ALJ found in the "special technique" that she had a moderate limitation in concentrating, persisting, or maintaining pace and thus, had severe mental limitations at Step Two, the ALJ should have found a limitation in performing one of the basic work activities (examples of which are listed in 20 C.F.R. §§ 404.1522(b), 416.922(b)) in the RFC determination.  (Pl.'s Br. at 10-13.)  The Court notes, however, that Hogue does not cite to any cases in her brief that support her argument.  Moreover, there are several judges in this district that have considered Hogue's exact argument and found it unpersuasive.  *See*, *e.g.*, *Roberts v. Comm'r of Soc. Sec.*, No. 4:24-cv-00930-BP, 2025 WL

1268116, at *3-6 (N.D. Tex. May 1, 2025) (Judge Hal R. Ray, Jr.);[16] *Julie H. v. Kijakazi*, No. 1:22-CV-00145-H-BU, 2023 WL 8183822, at *5 (N.D. Tex. Nov. 27, 2023) (Judge James Wesley Hendrix); *Sandra J. B. v. Kijakazi*, No. 1:21-CV-00038-BU, 2022 WL 2919491, at *3-6 (N.D. Tex. July 1, 2022) (Judge John R. Parker), *report and recommendation adopted*, 2022 WL 2918103 (N.D. Tex. July 25, 2022) (Judge Sam R. Cummings). The Court, in *Sandra J. B.*, specifically addresses the issue raised by Hogue, stating:

> Plaintiff provides no authority requiring an ALJ, upon finding a severe mental impairment at step two, to adopt a limitation specifically tailored to one of the non-exclusive basic work activities illustrated in Section[s §§ 404.1522(b),] 416.922(b). Nor does Plaintiff cite authority that mandates remand when there is an inconsistency between a finding of severe mental impairment on the one hand, and the absence of a limitation in performing one of the non-exclusive basic work activities listed on the other.
>
> Plaintiff appears to ask this Court, and without the benefit of authority, to seize upon a perceived inconsistency to conclude that remand is required. But Plaintiff has not articulated a properly supported legal standard that has been violated. Nor has she demonstrated how the challenged inconsistency, assuming it exists, deprives the ALJ's decision of the substantial evidence necessary to support it.

*Sandra J. B.*, 2022 WL 2919491, at *4.

Moreover, the Court in *Roberts*, *supra,* considered the identical factual issues set forth in this case. In *Roberts*, as in this case, the ALJ found at Step Two that the claimant had multiple severe impairments, including the mental impairments of depression and anxiety.[17] *See* Roberts, 2025 WL 1268116, at *2. In the analysis required under the "special technique," the ALJ in *Roberts*, just as in this case, also found that the claimant's mental impairments caused a moderate limitation in the functional area of concentrating, persisting, or maintaining pace. *Id.* at *3; *see*

---

[16] The Court notes that the opinion in *Roberts* was issued on May 1, 2025, which is after Hogue had filed her brief and reply brief in this case.

[17] In this case, the ALJ also found that Hogue had the severe mental impairment of PTSD, as well as depression and anxiety. (Tr. 20.)

Tr. 22. Thereafter, in making the mental RFC determination, the ALJ in *Roberts*, just as in this case, limited the claimant to work in which she could "understand, remember, and carry out detailed but not complex tasks and instructions." *Id.* at *2; *see* Tr. 23. The Court in *Roberts*, after analyzing the applicable regulations and the requirements of the "special technique" ultimately found that the ALJ's mental RFC determination did not conflict with the ALJ's conclusion in the special technique that the claimant was moderately limited in maintaining concentration, persistence, or pace. *Id.* at *3-6. A repeat of this analysis is unnecessary, especially in light of the fact that Hogue's attorney was also the attorney for the claimant in *Roberts* (as well as in *Julie H.* and *Sandra J. B.*, *supra*.) Thus, based on the analysis set forth in *Roberts*, *supra*, the Court finds and concludes that the ALJ did not err in formulating his mental RFC determination and remand is not required on this issue. *Id.*; *see also Julie H.*, 2023 WL 8183822, at *5-6; *Sandra J. B.*, 2022 WL 2919491, at *3-6. Specifically, the Court notes that, in this case, the ALJ properly discussed the evidence in the record in making his RFC determination, explained his reasoning for the RFC determination, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into the RFC that the record most supported. *See Muse*, 925 F.2d at 790.

**RECOMMENDATION**

Based on the foregoing, it is recommended that the Commissioner's decision be **AFFIRMED.**

**NOTICE OF RIGHT TO OBJECT TO PROPOSED
FINDINGS, CONCLUSIONS AND RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's

proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## **ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **July 21, 2025,** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED July 8, 2025.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE